IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINE SMITH *
 *
 *
v. *
 * Civil Action No. WMN-12-3215
OFFICER JEREMY MOTHERSHED *
et al. *
 *
 *
 *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is Defendants' Motion to Dismiss, ECF No. 8.[1]  The motion is ripe.  Upon a review of the pleadings, the papers, and the applicable law, the Court determines (1) that no hearing is necessary, Local Rule 105.6, and (2) that the motion will be granted, in part, and denied, in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Antoine Smith, brings this action against Officer Jeremy Mothershed, Sergeant Donald Gividen, Deputy Ronald Dawson, and Officer Charles Blessing (collectively "Defendants"), all of whom are employed by the Harford County Sheriff's Office.  Plaintiff alleges that Defendants are liable for tort and constitutional claims stemming from an incident

---

[1] Also before the Court is a Motion for Leave to Amend the Complaint, ECF No. 9, to which Defendants have consented, ECF No. 11.  The motion will be granted.

that occurred on November 1, 2009, at Tully's Bar in Harford County, Maryland.

Plaintiff alleges the following facts in his Amended Complaint. Plaintiff was leaving the bar with friends when their vehicle was stopped by two officers who have not been named as Defendants. Am. Compl. ¶¶ 6-8. Plaintiff, who was sitting in the back seat of the car, was asked to step outside the vehicle, but was not familiar with the locks in the car, and could not determine how to unlock the door. Defendants then forced Plaintiff from the vehicle. Am. Compl. ¶¶ 8-10.

In his opposition to the Motion to Dismiss, Plaintiff provides additional detail by stating that the officers "broke the windows to the position where Plaintiff was seated and several of them (specifically Defendants Gividen and Mothershed) pulled Plaintiff through the window as he was yelling to the crowd for help as he was being cut by glass and excessively yanked and thrown to the ground." ECF No. 10 at 1. Plaintiff was then placed in handcuffs while he was on the ground and, despite screaming to the officers that they were hurting him, Defendants beat and tasered him. Am. Compl. at ¶¶ 10-13. In addition, Plaintiff alleges that while he was handcuffed, Defendants deployed a K-9 towards him, which they caused to bite a "large chunk of flesh from his leg." Am. Compl. ¶ 14; ECF No. 10 at 2.

Plaintiff further alleges that Defendants maliciously charged him with certain criminal offenses including resisting arrest and assault. Id. at ¶¶ 15, 24. He asserts that Defendants did not have probable cause to support the criminal charges because they knew that he did not commit the offenses with which he was charged. Id. at ¶ 23. Ultimately, Plaintiff reached an agreement with the State whereby he pleaded guilty to disorderly conduct in exchange for the other charges being dropped. The Circuit Court for Harford County granted Plaintiff probation before judgment. ECF No. 8-2 (Transcript of Proceedings, State v. Smith, No. 12-K-10-068 (Cir. Ct. Harford Cnty. Sept. 27, 2011)).

Plaintiff filed notice of his claim against Defendants with the Maryland State Treasurer within one year of the incident pursuant to the Maryland Torts Claims Act (MTCA), Md. Code Ann., State Gov't §§ 12-101 – 12-110.[2] Id. at ¶¶ 15-16, 21-24. In his

---

[2] Section 12-106(b)(1) of the MTCA states that a claim against State personnel may only proceed when the "claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim." Defendants moved to dismiss arguing that Plaintiff failed to allege compliance with this requirement. Plaintiff has amended his Complaint to make the appropriate allegation, see Am. Compl. ¶ 16, and Defendants appear to have dropped their argument for dismissal based on this issue in that they failed to renew it in their reply briefing. This entire issue may be a moot point, however, based on the Court's determination that Plaintiff's Amended Complaint states claims against Defendants in their personal capacities. See infra note 5.

Amended Complaint, Plaintiff asserts eight causes of action against the Defendants:[3] Count I, False Imprisonment; Count II, Malicious Prosecution; Count III, violation of Article 26 of the Maryland Declaration of Rights; Count IV, Battery; Count V, False Arrest; Count VI, violation of Article 24 of the Maryland Declaration of Rights; Count VII, violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; and, Count VIII, Gross Negligence.

## II. LEGAL STANDARD

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the complaint must contain sufficient factual allegations that "state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A complaint states a plausible claim for relief when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When reviewing a motion to

---

[3] Plaintiff requests $600,000.00 in compensatory damages and $3,000,000.00 in punitive damages.

dismiss, all factual allegations must be accepted as true and viewed in the light most favorable to the plaintiff. Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Evaluating whether a claim is plausible on its face is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. DISCUSSION

Defendants assert that various immunities bar Plaintiff's action. In addition, they argue that the doctrines of collateral estoppel and res judicata bar Plaintiff's false imprisonment and malicious prosecution claim. Finally, in the event that one or more of Plaintiff's state law claims are not dismissed, Defendants argue that his prayer for punitive damages should be stricken.[4]

---

[4] Some of Defendants' arguments rest on materials they have submitted with the motion. As such, they address issues beyond the four corners of Plaintiff's complaint and the Court believes that Plaintiff should have the benefit of discovery before answering them. Thus, despite Defendants' implicit invitation to do so, the Court will not exercise its discretion to convert the motion to dismiss to one for summary judgment.

5

**A. Defendants' Claims of Immunity**

Defendants assert qualified immunity as a defense to Plaintiff's § 1983 claim. They also argue that they are immune from Plaintiff's state law claims, based on Maryland common law qualified immunity and statutory immunity.[5]

**1. Qualified Immunity for Federal Claims**

Defendants move to dismiss Plaintiff's § 1983 claim based on the doctrine of qualified immunity. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Layne, 526

---

[5] When evaluating a defendant's claim of immunity, it is necessary to consider whether the plaintiff has stated claims against the defendant in his personal or his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165-68 (1985) (explaining that an official capacity suit is simply another way of pleading an action against the state and that the only immunities that can be claimed are forms of sovereign immunity whereas in a personal capacity action a defendant may be able to assert personal immunity defenses such as qualified immunity). Here, Plaintiff's Amended Complaint does not specify the capacity in which he seeks to sue Defendants. In his opposition, however, he states that he "intends to sue the Defendants in their individual capacity." ECF No. 10 at 5. This appears to be consistent with the other indicia of capacity in Plaintiff's Amended Complaint. See Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). The Court will thus construe Plaintiff's Amended Complaint as being brought against Defendants' in their individual capacities.

6

U.S. 603, 609 (1999)). An official is not entitled to qualified immunity, however, when (1) "the allegations underlying the plaintiff's claim, if true, substantiate the violation of a federal statutory or constitutional right;" and (2) "this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Ridpath, 447 F.3d at 306 (quoting Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003)). While immunity issues should be resolved at the earliest stage of the litigation as possible, in some cases it may not be possible to resolve a defendant's claim of immunity without discovery. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995) ("In instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version of events he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery."). Here, Defendants argue that all actions taken to detain Plaintiff were necessary and reasonable under the circumstances. In addition, Defendants argue that Plaintiff's claims[7] do not meet the two-prong test that provides an exception to their asserted defense.

---

[7] Although neither the Amended Complaint nor the Motion to Dismiss explicitly use the phrases "unlawful seizure" and "excessive force" for violation of the Fourth Amendment, the

7

### a. Unlawful Seizure

"There is no cause of action for false arrest under section 1983 unless the arresting officer lacked probable cause." Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). Here, Plaintiff alleges that "Defendant(s) arrested Plaintiff(s) without probable cause" and "Defendants arrested Plaintiff without legal justification." Compl. ¶¶ 34-35. Defendants clearly dispute this allegation as a matter of fact and argue that they are entitled to qualified immunity because they had probable cause to arrest him. See ECF No. 8-1 at 8. Because Plaintiff has not had the opportunity to conduct any discovery, however, the Court will not dismiss Plaintiff's claim at this stage based on qualified immunity.

### b. Excessive Force

Defendants also argue that they are entitled to qualified immunity on Plaintiff's § 1983 excessive force claim. To state a § 1983 claim for excessive force a plaintiff must allege that the force used to affect his seizure was unreasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 396 (1989). Determining whether the amount of force used to seize a person was reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment

---

Court infers, based on Plaintiff's other allegations, that he seeks to allege both unlawful seizure and excessive force.

interests' against the countervailing governmental interests at stake." Id. (quoting Tennessee v. Garner, 471, U.S. 1, 8 (1985)). The relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

Taking all of Plaintiff's factual allegations as true, the Court finds that he has properly alleged a claim for excessive force. Plaintiff alleges that Defendants pulled him through a broken car window and once he was removed from the car handcuffed on the ground, he was beaten, tasered, and bitten by a K-9. These facts would support a finding that the amount of force Defendants used to arrest him was unreasonable under the circumstances. See Waterman, 393 F.3d at 481 ("Force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."); Vathekan v. Prince George's Cnty, 154 F.3d 173, 178 (4th Cir. 1998) (holding that "[a]n attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation"); Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987) (holding that officer used excessive force when violently kneeing the handcuffed detainee in the groin). Therefore, at this stage, Defendants are not

entitled to qualified immunity on Plaintiff's § 1983 excessive force claim.

### 3. Maryland Common Law Public Official Immunity

Under Maryland common law, public official immunity shields officers from liability for negligent acts performed in the course of their discretionary duties. Houghton v. Forrest, 989 A.2d 223, 227 (Md. 2010). It does not apply to intentional torts or constitutional torts. Johnson v. Prince George's Cnty, Md., No. 10-0582, 2011 WL 806448, at *7 (D. Md. May 17, 2012). Here, Plaintiff has not stated a claim for negligence. Therefore, common law qualified immunity under Maryland law does not apply in this case.

### 4. Maryland Statutory Immunity

Defendants also claim that they are entitled to statutory immunity. Under Maryland law, State personnel[11] are provided with statutory immunity for both negligent and intentional torts, McDaniel v. Arnold, 898 F. Supp. 2d 809, 849 (D. Md. 2012), when the "tortious act or omission that is within the scope of the public duties of the State personnel and is made

---

[11] Section 12-101(a)(6) of the MTCA includes "a sheriff or deputy sheriff of a county or Baltimore City" in the definition of "State personnel." In this case, Defendants are officers of the Harford County Sheriff's Office and thus are within the scope of State personnel who are immune from liability in certain circumstances. See State v. Card, 656 A.2d 400, 402 (Md. Ct. Spec. App. 1995) (holding that sheriffs and deputies fall within the scope of statutory immunity).

without malice or gross negligence."[12] Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Malice in this context "has an 'actual malice' meaning, and requires a determination of whether the arresting officer's 'conduct, given all of the existing and antecedent circumstances, was motivated by ill will, [or] by an improper motive . . . . [T]hat motive or animus may exist even when the conduct is objectively reasonable.'" 762 A.2d 172, 189 (Md. Ct. Spec. App. 2000) (quoting Shoemaker v. Smith, 725 A.2d 549, 560 (Md. 1999)), cert. denied 768 A.2d 55 (Md. 2001). Gross negligence, on the other hand, is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." Taylor v. Harford Cnty Dept. of Social Servs., 862 A.2d 1026, 1035 (Md. 2004) (quoting Romanesk v. Rose, 237 A.2d 12 (Md. 1968)); see also McDaniel, 898 F. Supp. 2d at 849.

Defendants argue that they are entitled to immunity because Plaintiff's Amended Complaint lacks allegations of malice and the conclusory allegations of gross negligence are insufficient to state a claim. ECF No. 8, at 8-12, 16-18. The Court disagrees. Plaintiff's allegations that Defendants forced him

---

[12] The parties agree that Defendants were acting within the scope of their employment. Am. Compl. ¶ 5; ECF No. 8, at 10.

11

from the car and then when he was on the ground and handcuffed, beat him, tasered him, and caused a K-9 to bite a large piece of flesh from his leg, Am. Compl. ¶¶ 10-14, are sufficient to support a finding that Defendants acted with malice or gross negligence. See Bixler v. Harris, No. 12-1650, 2013 WL 2422892, at *9 (D. Md. June 3, 2012) (finding sufficient allegations of malice where the plaintiff alleged that he was punched, thrown, and beat by officers who also broke his sunglasses and cell phone); Okwa, 757 A.2d at 129 (denying the defendants' motion for summary judgment where the plaintiff claimed that the defendants acted with malice which was supported by allegations that officers roughly dragged him, hit him in the head and the neck, and twisted his handcuffed thumbs). Therefore, Defendants' claim to statutory immunity will be denied.

**B. Collateral Estoppel and Res Judicata**

Defendants argue that Plaintiff's false imprisonment and malicious prosecution claims should be dismissed under the doctrine of collateral estoppel or res judicata. ECF No. 8, at 12-16. They argue that Plaintiff's plea of guilty to the charge of disorderly conduct demonstrates that Defendants had probable cause for his arrest and prosecution and that the issue should not be relitigated here.

The doctrines of collateral estoppel and res judicata are affirmative defenses that are "varieties of preclusion."

12

Haskins v. Hawk, No. 11-2000, 2013 WL 1314194, at *27 (D. Md. Mar. 29, 2013). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Maryland law applies the three traditional elements of res judicata:

> (1) The parties in the present litigation should be the same or in privity with the parties to the earlier case;
>
> (2) The second suit must present the same cause of action or claim as the first; and
>
> (3) In the first suit there must have been a valid final judgment on the merits by a court of competent jurisdiction.

Colandrea, 761 A.2d at 908.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen, 449 U.S. at 94. Maryland law applies a four-part test to determine if collateral estoppel precludes the relitigation of issues that were previously decided:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> (2) Was there a final judgment on the merits?
>
> (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

13

>     (4) Was the party against whom the plea is asserted
>     given a fair opportunity to be heard on the issue?

Colandrea, 761 A.2d at 909.

Neither doctrine applies here because the trial court granted Plaintiff probation before judgment and the law is clear that probation before judgment is not a final judgment on the merits. Powell v. Md. Aviation Admin., 647 A.2d 437, 440-41 (Md. 1994); State v. Hannah, 514 A.2d 16, 21 (Md. 1986). The Court will, therefore, not dismiss Plaintiff's claims for false imprisonment and malicious prosecution on the basis of res judicata or collateral estoppel.

In addition, Defendant's arguments regarding collateral estoppel fail because "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Allen, 449 U.S. at 95. This issue is of particular importance where, as here, Defendants are seeking to use Plaintiff's guilty plea against him. In Federal Insurance Co. v. Edenbaum, this Court noted:

> When a plea of guilty has been entered in the prior
> action, no issues have been drawn into controversy by
> a full presentation of the case. It may reflect only
> a compromise or belief that paying a fine is more
> advantageous than litigation. Considerations of
> fairness to civil litigants and regard for the
> expeditious administration of criminal justice . . .
> combine to prohibit the application of collateral
> estoppel against a party who, having pleaded guilty to

>  a criminal charge, seeks for the first time to
>  litigate his cause in a civil action.

No. JKS 12-410, 2012 WL 2803739, at *3 (D. Md. July 9, 2012) (quoting Brohawn v. Transamerica Insurance Co., 347 A.2d 842, 848 (Md. 1975) (internal quotations and citations omitted)). In this case, it is likely that Plaintiff pleaded guilty to disorderly conduct to avoid litigating the other more serious charges.

### C. Punitive Damages

Defendants argue that Plaintiff's demands for punitive damages under his state law claims should be dismissed because the State has not waived its immunity for punitive damages. Md. Code Ann., Cts. & Jud. Proc., § 5-522(a)(1). The Court, however, has found that Plaintiff's claims are brought against Defendants in their personal capacities, supra, note 5, and thus Defendants' point is moot.

Under Maryland law, punitive damages are limited to circumstances where the defendant has acted with actual malice. French v. Hines, 957 A.2d 1000, 1027 (Md. 2008). As already noted, gross negligence is different from actual malice. Therefore, the Court will strike Plaintiff's request for punitive damages under his gross negligence claim. See Hines, 957 A.2d at 1027.

**IV. CONCLUSION**

For the above-stated reasons, Defendants' Motion to Dismiss will be granted, in part, and denied, in part.

A separate order will issue.

                                                _____/s/_____
                                                William M. Nickerson
                                                Senior United States District Judge

August 21, 2013